# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANTHONY D. KIRKWOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:08-CV-266-TS |
| ) | |
| FORT WAYNE POLICE DEPARTMENT ) | |
| OFFICERS MICHAEL DELONG, ) | |
| DARREN KENMORE, ) | |
| MATTHEW CRAWFORD, ) | |
| EDWARD BLACK, ) | |
| THOMAS CHRISTEN, ) | |
| BOYCE BALLINGER, ) | |
| SGT. RANDY HOSFORD, and ) | |
| K-9 OFFICER ROBERT HATFIELD, ) | |
| ) | |
| Defendants. ) | |

## OPINION and ORDER

On February 5, 2009, the Plaintiff, Anthony D. Kirkwood, filed his Amended Complaint against the Defendants, alleging that the Defendant police officers violated his Constitutional rights when they arrested him at his house on September 8, 2007. On October 21, 2009, Defendants Edward Black, Thomas Christen, Boyce Ballinger, Randy Hosford, Michael DeLong, Darren Kenmore, and Matthew Crawford (the Fort Wayne Defendants) filed their Motion for Summary Judgment [DE 27]. Defendant Robert Hatfield filed his Motion for Summary Judgment on the same day [DE 29]. On December 30, the Plaintiff filed a Response in Opposition [DE 35] to both Motions. On January 7, 2010, the Fort Wayne Defendants and Defendant Hatfield filed separate Replies [DE 37, 40], and the Motions are now ripe for adjudication. Also before the court is a Motion to Strike Portions of the Affidavit of Anthony Kirkwood [DE 38], filed on January 7, 2010.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not

required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989).

**BACKGROUND**

Construing all facts in a light most favorable to the Plaintiff, the Court finds the following facts. On September 8, 2007, the Plaintiff lived in Fort Wayne, Indiana with his girlfriend, Breanna Sauers, and his two sons. That evening, while about to take his evening shower, the Plaintiff received a phone call from his friend Terry Rhodes, who said that he was nearby and would be stopping by the Plaintiff's residence for a visit. The Plaintiff told Rhodes that he was about to shower and would be unable to answer his door, but that Rhodes was welcome to sit and wait in Sauers' car, which was parked, unlocked, in the driveway. Rhodes arrived and did so. After showering, the Plaintiff dressed, went to his garage, and opened the garage door partway so that Rhodes could climb underneath and enter the residence.

This seemingly harmless series of events appeared to be more sinister to Marilyn Montgomery, who lived across the road from the Plaintiff. During the events in question, Montgomery was outside sweeping her driveway and sidewalk. She noticed Rhodes approaching the Plaintiff's house talking loudly on his cell phone. Montgomery, who had never before seen Rhodes, observed him stop in front of the Plaintiff's garage and get into Sauers' car in the driveway. When she saw Rhodes enter the Plaintiff's garage, she feared that the house was being robbed and called 911 to report a possible burglary in progress.

When the Plaintiff and Rhodes entered the residence through the attached garage, they heard sirens and police radios. As the Plaintiff walked past a bedroom window he heard a male

3

voice yelling, opened the window, and was confronted with a uniformed police officer holding a shotgun. The officer identified himself as police and instructed the Plaintiff to come out of the house. The Plaintiff returned to the open garage, where he encountered several police officers and got on his knees. Once on his knees, Officer DeLong physically took the Plaintiff the rest of the way to the ground, "clobbering" him, applied an arm bar, kneed the Plaintiff in the back, and handcuffed him. The Plaintiff was then put in the back of a police car. Between five and twenty seconds elapsed between DeLong first making physical contact with the Plaintiff and the end of the altercation. Several other officers were standing about ten feet away throughout the arrest.

After the Plaintiff was secured, officers entered the Plaintiff's residence. The Plaintiff was not able to observe what went on inside his residence, but on returning home he noted that several of his wrapped birthday presents had been opened, drawers had been opened, piles of clothes had been rummaged through, and couch cushions had been moved.

## MOTION TO STRIKE

The Fort Wayne Defendants have moved, pursuant to Federal Rule of Civil Procedure 56(e), to strike the entirety of paragraph eight of the Plaintiff's affidavit. Paragraph eight reads:

> When I complied with the officer's orders to walk out of the garage, hold my hands in the air, and get down on my knees—all of which I did—there were a number of officers, perhaps four or five, that were all pointing guns at me and very close to me, certainly within ten feet or so, that they could have stopped Officer DeLong from "rushing me," tackling me (as I was already kneeling down on the ground anyway), clobbering me, jabbing a knee into my back, and otherwise using force against me that was not necessary. But no officer intervened or helped in any way.

(Kirkwood Aff. ¶ 8.) The Plaintiff contends that because the paragraph is not based on personal knowledge and contains a legal conclusion that the other officers "could have stopped Officer

4

DeLong," it should be stricken.

A court may only consider only those parts of an affidavit that satisfy the requirements of Rule 56(e), *Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998), which requires that affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated," Fed. R. Civ. P. 56(e)(1).

Thus, one requirement is that affidavit testimony must concern matters within the affiant's personal knowledge. Fed. R. Civ. P. 56(e)(1); *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)). Additionally, Rule 56(e) requires specificity because, absent evidence supported by specific facts, conclusory allegations by a party opposing summary judgment cannot defeat a motion for summary judgment. *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court finds that all of paragraph eight is properly before the Court, excepting the phrase, "they could have stopped Officer DeLong." There are no legal conclusions in the affiant stating that he complied with police orders, put his hands in the air, and went down on his knees; that there were four or five police officers standing less than ten feet away from him; that Officer DeLong used physical force against him; or that no other officer intervened in the altercation. All

of these statements are also made from the affiant's firsthand knowledge.

However, the Plaintiff's conclusion that the other officers "could have stopped Officer DeLong" could be construed as a legal conclusion. To the extent that the Plaintiff purports to testify to whether the officer had a realistic opportunity to intervene to prevent the harm from occurring[1], his statement will not be considered by the Court. *See, e.g., Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argumentation in an affidavit may be disregarded."). The Court will therefore decline to strike paragraph eight, but will consider its contents only as they relate to the affiant's observations, and not his legal conclusions.

## DISCUSSION

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)).

---

[1] *Yang v. Hardin* sets forth the requirements for when a state actor's failure to intervene in an excessive force altercation renders him liable under Section 1983: "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under section 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen had been unjustifiably arrested, or (3) that any constitutional violation had been committed by a law enforcement officer; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." 37 F.3d 282, 285 (7th Cir. 1994).

The Plaintiff alleges that while the Defendant officers were acting under color of law, they violated his constitutional rights under the Fourth Amendment. The parties do not dispute that the Defendant officers were acting under color of state law. The Court will discuss whether genuine issues of material fact exist as to whether the Defendant officers violated the Plaintiff's constitutional rights during the course of arresting him and searching his property.[2]

A.      **Fourth Amendment—Excessive Force**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). When officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them," from the perspective of a reasonable officer, the officers' actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against

---

[2] The Plaintiff's Complaint [DE 1] appears to contain a claim for false arrest in addition to the claims for excessive force and an illegal search—the false arrest claim was argued by both the Fort Wayne Defendants and Defendant Hatfield in their motions for summary judgment. In the Fort Wayne Defendants' Motion for Partial Summary Judgment, they state that they are not seeking summary judgment for Officer DeLong as to the false arrest claim. The claim is not addressed in any other briefs by any of the parties. Therefore the Court will grant summary judgment on the false arrest claims as to all of the Defendants except for Officer DeLong.

7

the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003).

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)).

It is undisputed between the parties that questions of triable fact exist as to Officer DeLong's behavior regarding the excessive force claim. Therefore that claim will survive summary judgment. In analyzing the other officers' potential liability on a failure to intervene theory, the Court will address the remaining Fort Wayne Defendants and Defendant Hatfield collectively.

8

The Court will find that genuine issues of triable fact exist as to whether these officers could have intervened to stop the allegedly excessive force that Officer DeLong used against the Plaintiff.[3] In so ruling, the Court first notes the Fort Wayne Defendants' concession that "[e]ven giving Kirkwood all benefit of the doubt, he can establish nothing more than that these defendants may have been present at the scene." (Motion for Partial Summary Judgment at 10). Again, the two prongs of the failure to intervene test, as applied to this case, are if the officer had reason to know: (1) that excessive force was being used, (2) that a citizen had been unjustifiably arrested, and (2) the officer had a realistic opportunity to prevent the harm from occurring. *Yang*, 37 F.3d at 285.

As noted above, the Defendants concede that issues of triable fact exist as to whether Officer DeLong used excessive force. Therefore the Court's analysis turns on whether the officers had a realistic opportunity to intervene. The Defendants argue that "[a]s the situation here unfolded so rapidly, there was no realistic opportunity to intervene and any such theory cannot survive summary judgment." (Motion for Partial Summary Judgment at 17). The Defendants cite to several cases in support of this proposition. The first, a 1999 case from the Middle District of Alabama, held that two bystander officers who observed another officer kick an arrestee without warning could not be held liable for failing to intervene. *See Martin v. Anderson*, 107 F. Supp. 2d 1342 (M.D. Ala. 1999). The second case is a 1988 case from the Court of Appeals for the Second Circuit, in which the court found dispositive that "the three

---

[3] In his Complaint, the Plaintiff seems to allege that the Fort Wayne Defendant Officers may have themselves used unreasonable force by pointing their guns at the Plaintiff. However, the Plaintiff failed to respond to the Defendants' well-briefed argument that pointing a gun at a suspect cannot be considered unreasonable force. Therefore the Court will only analyze the excessive force claim as to the Fort Wayne Defendants under a theory of failure to intervene.

9

blows were struck in rapid succession that [the bystander officer] had no realistic opportunity to prevent them." *O'Neill v. Krzeminksi,* 839 F.2d 1 (2d Cir. 1988). Finally, the Defendants cite a case from this district in which the court found no liability for bystander officers when they were not in a position to properly observe the use of force. *See Thomas v. City of Fort Wayne*, 2008 WL 282348 (N.D. Ind. Jan. 31, 2008).

The Court finds no discernible pattern in these holdings. The three courts in the cited cases found persuasive the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation. These are all common-sense factors that any court should take into account in a totality of the circumstances inquiry. In this case, the Court finds an issue of triable fact as to whether the bystander officers could have intervened to prevent the alleged excessive force. In his affidavit, the Plaintiff has presented evidence that the use of force by DeLong involved three separate blows—a tackle, an arm bar, and a knee to the back. The officers were standing ten feet away or less. The altercation, by DeLong's own estimate, may have lasted for twenty seconds. With these facts, a jury could reasonably find that the bystander officer had reason to know that excessive force was being used, and that the officers could have stopped the force from being used. Therefore summary judgment will not be granted for any of the Fort Wayne Defendants on the excessive force claim.

**B.      Fourth Amendment—Illegal Search**

Save for a few exceptions, the Fourth Amendment prohibits the warrantless entry of a person's home to conduct a search. *Kyllo v. United States*, 533 U.S. 27, 31 (2001). A "search"

occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Brock*, 417 F.3d 692, 696 (7th Cir. 2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). All Defendants in this case concede that they did not possess a warrant when they entered the Plaintiff's residence, but argue that their actions were lawful under the "protective sweep" exception. Under the protective sweep exception, officers may, incident to arrest, and as "a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest *from which an attack could be immediately launched.*" *Peals v. Terre Haute Police Dept.*, 535 F.3d 621 (7th Cir. 2008) (emphasis added) (citing *Maryland v. Buie*, 494 U.S. 325, 331 (1990)). A search beyond those parameters is only justified when there are "articulable facts which . . . would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Peals*, 535 F.3d at 621 (quoting *Leaf v. Shelnutt*, 400 F.3d 1070, 1086 (7th Cir. 2005)). This Court is mindful that a protective sweep is "not a full search of the premises but may extend only to a cursory inspection of those spaces where a person may be found" *Buie*, 494 U.S. at 335, and that the justification for a protective sweep is to protect "the safety of police officers, who have an interest in ensuring their safety when they lawfully enter a house," *Leaf*, 400 F.3d at 1087.

Under the above-cited law, the Defendants must show that the arrest of the Plaintiff justified a protective sweep, and that the sweep did not exceed its legal scope. As an initial matter, the Court notes that the undisputed evidence shows that Officers Kenmore and Christen did not enter the residence after the Plaintiff's arrest. As such, summary judgment will be granted to these two officers on the illegal search claim. Regarding the rest of the police officers,

11

the Defendants argue that a protective sweep was warranted, incident to the Plaintiff's arrest. Even if it accepts the Defendants' argument, the Court still finds that more than enough evidence exists to find an issue of triable fact at this point as to whether the search exceeded the *scope* of a protective sweep, particularly given the Plaintiff's allegation that the officers searched several places where a person could not have been hiding. Therefore, the Court finds that the protective sweep exception did not necessarily justify the warrantless search as a matter of law, and will not grant summary judgment on this ground to the remaining officers.

Additionally, the Defendants contend that their search was justified by the "exigent circumstances" exception. Officers may enter and search a home if they have a "reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003). Examples of exigent circumstances that may justify a warrantless entry into a home include the hot pursuit of a fleeing felon, preventing the imminent destruction of evidence, preventing a suspect's escape, or addressing the risk of danger to police. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). In addition, exigent circumstances justify a warrantless search where police officers "reasonably fear for the safety of someone inside the premises." *Jenkins*, 329 F.3d at 581. If the Government establishes that exigent circumstances justified a warrantless entry into a residence, it must also demonstrate that "the ensuing search . . . was appropriately limited to the circumstances that justified it." *United States v. Collins*, 2004 WL 2179230, at *4 (7th Cir. Sept. 9, 2004) (quoting *United States v. Salava*, 978 F.2d 320, 324 (7th Cir. 1992)).

The Defendants' exigent circumstances argument fails for the same reason as its protective sweep argument does. The exigent circumstances claimed by the Defendants are that

they had a reasonable basis to believe that a robbery was in progress, and that circumstances "existed for the officers to enter the house . . . to search for the suspected burglars, or any innocent victims who may have been inside of the residence." However, the Plaintiff has alleged that the places searched in the sweep could not have concealed an individual. Given this Court's obligation at this time to construe all facts in a light most favorable to the Plaintiff, the Court cannot grant summary judgment on the exigent circumstances argument.

### C.     Qualified Immunity

Finally, the Defendants argue that they are entitled to summary judgment based on a theory of qualified immunity. Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Id.* at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's

13

mistake was unreasonable. *Id.* at 201–202. This two step process is advised, but not mandatory, and courts are permitted to address either branch independently. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). It is the plaintiff's burden to show a defendant's conduct violated clearly established law, and he may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior case with nearly identical facts; the plaintiff must produce case law showing the state of the law at the time of the officers' conduct was such that they had fair warning their conduct violated the Constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

     Regarding the excessive force claim, the Court has already discussed why "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officers' conduct violated a constitutional right." The inquiry thus turns to whether the right violated (freedom from excessive force during an arrest) was so clearly established at the time of the arrest as to make the officer's mistake unreasonable. However the Seventh Circuit has consistently held that it is "clearly established that a police officer may not use excessive force in arresting an individual." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). Accepting as true for the limited purpose of summary judgment that the Plaintiff's contention that he was subjected to being tackled, arm barred, and kneed in the back after surrendering himself to police, Officer DeLong could not have reasonably thought that the type of force the Plaintiff alleged was justified. Accepting as true the Plaintiff's contention regarding the positions of the other officers, they could not have reasonably thought that allowing the

14

excessive force of their colleague to continue was lawful.

Regarding the illegal search claim, the law was clearly established at the time of the search that a protective sweep may only be broad enough in scope to allow police to search places "from which an attack could be immediately launched." *See Buie*, 494 U.S. at 331. Accepting as true the Plaintiff's contentions, as is required at this point, the actions of opening drawers, searching in a couch, and opening birthday presents would not fall into that limited scope. And as the purported reason for the exigent circumstances search was officer and resident safety, those circumstances would not have reasonably supported all of the places searched by the officers. For the aforementioned reasons, none of the officers are entitled to qualified immunity as an affirmative defense at this point in the case.

## CONCLUSION

For the foregoing reasons, the Fort Wayne Defendants' Motion to Strike [DE 56] is GRANTED IN PART and DENIED IN PART. The Fort Wayne Defendants' Motion for Summary Judgment [DE 27] is GRANTED IN PART and DENIED IN PART. Defendant Robert Hatfield's Motion for Summary Judgment [DE 29] is GRANTED IN PART and DENIED IN PART.

The remaining claims in this case are as follows: Officer DeLong has claims of false arrest, excessive force, and illegal search remaining against him. Officers Crawford, Black, Ballinger, Hosford, and Hatfield have claims of excessive force (bystander liability) and illegal search remaining against them. Officers Christen and Kenmore have the claim of excessive force (bystander liability) remaining against them.

SO ORDERED on February 1, 2010.

      s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION